UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATRINA M.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY,
Commissioner of Social Security,[2]

    Defendant.

Civil Action No. 21-cv-3297

## MEMORANDUM OPINION

Plaintiff Katrina M. is a fifty-one-year-old woman who seeks Supplemental Security Income ("SSI") Benefits and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act") due to sarcoidosis of the heart with defibrillator implantation, arthritis in both hands, and shortness of breath. *See* ECF No. 10 at 1; ECF No. 4 ("AR") at 16, 1073–81, 1115. The Social Security Administration ("SSA" or "Commissioner") entered a final decision denying Plaintiff's claim on October 12, 2021. AR at 1–4. On appeal to this Court, Plaintiff seeks reversal or, alternatively, remand for reconsideration under 42 U.S.C. § 405(g). ECF No. 10 at 1.[3]

---

[1]     Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Sept. 24, 2024).

[2]     Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for his predecessor. *See* Fed. R. Civ. P. 25(d).

[3]     Relevant docket entries are: (1) the Administrative Record (ECF No. 4 and its attachments); (2) Plaintiff's Motion for Judgment of Reversal (ECF No. 10); (3) Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal and Motion for Judgment of Affirmance (ECF No. 13); and (4) Plaintiff's combined Opposition to Defendant's Motion for Judgment of Affirmance and Reply in Support of her Motion for Judgment of Reversal (ECF No. 16).

1

Plaintiff argues that the Administrative Law Judge ("ALJ") erred as a matter of law and rendered a decision that is not supported by substantial evidence.  ECF No. 10.  Specifically, Plaintiff asserts that the ALJ: (1) erred in assessing Plaintiff's Residual Functional Capacity ("RFC") by failing to address her non-severe mental impairments; (2) failed to perform a functional assessment of her limitations with a developed narrative discussion; (3) failed to properly evaluate pertinent evidence; and (4) failed to properly consider the combination of her impairments in formulating her RFC.  *Id.* at 3, 6, 18, 20, 22.  The Commissioner responds that: (1) the ALJ's RFC formulation is supported by substantial evidence; (2) the ALJ "properly considered the relevant evidence" in the record; (3) and "[s]ubstantial evidence supports the ALJ's consideration of Plaintiff's non-severe impairments."  ECF No. 13 at 8, 14, 17.

Upon review of the Administrative Record, the Parties' briefs, and the relevant law, this Court will **GRANT** Plaintiff's Motion for Judgment of Reversal (ECF No. 10), **DENY** Defendant's Motion for Judgment of Affirmance (ECF No. 13), and remand this matter to the Commissioner for further proceedings consistent with this Memorandum Opinion.

## BACKGROUND

### A. The Social Security Act

Congress enacted the Social Security Act to support individuals unable to work for reasons including disability.  *See, e.g.*, *Smith v. Berryhill*, 587 U.S. 471, 474–75 (2019).  To qualify for benefits under the Act, a claimant must show that she is "disabled."  *See* 42 U.S.C. § 1382(a)(1).  A person is "disabled" when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step test to evaluate whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." *Id.* Second, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment" or "combination of impairments." *Id.* Third, the ALJ decides whether the claimant's impairment(s) is among those disabilities in a regulatory listing that conclusively establishes disability. *Id.* If the impairment conclusively establishes disability at step three, that is the end of the analysis. *Id.* If not, a claimant may still be disabled depending on the outcome of the final two steps. *Id.* Fourth, if disability was not established at step three, the ALJ assesses a claimant's RFC and past relevant work. *Id.* Fifth, the ALJ considers whether the claimant can perform other work in the national economy considering her age, education, work experience, and RFC. *See id.*; *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

The RFC is "what an individual can still do despite his or her limitations." S.S.R. 96–8p, 1996 WL 374184, at *2. It is an assessment "of the extent to which an individual's medically determinable impairment(s), including any related symptoms . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities." *Id.* The RFC reflects an individual's "*maximum* remaining ability to do sustained work activities." *Id.* The claimant bears the burden of proof at the first four steps of the evaluation. *Butler*, 353 F.3d at 997. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform specific jobs available in the national economy. *Id.* The ALJ may ask a vocational expert to testify as to whether the claimant can perform other work due to her RFC. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

### B. Plaintiff's Disability Claims and Procedural History

Plaintiff was born on April 6, 1973. AR at 105. She has a General Equivalency Diploma and no additional vocational training but has taken some college courses in project management. *See id.* at 71, 105. From April 2006 to April 2016, Plaintiff worked as a security guard. *Id.* at 71–72. From 2003 to April 2016, Plaintiff also worked as a childcare attendant. *Id.*

Plaintiff initially filed applications for DIB and SSI on April 18, 2019, both of which SSA denied following administrative hearings on October 19, 2020 and February 24, 2021. *See id.* at 16, 64–96, 98–136. Plaintiff alleged her disability began on May 31, 2016. *Id.* at 16. The Commissioner first denied Plaintiff's claims on September 23, 2019, and again upon reconsideration on December 6, 2019. *Id.* at 16. On December 6, 2019, Plaintiff filed a written request for a hearing, which the ALJ held on October 19, 2020 and February 24, 2021. *Id.* at 64, 98.

### C. The Administrative Hearing

During the October 19, 2020 hearing, the ALJ heard testimony from Plaintiff and a vocational expert. *Id.* at 98–136. Plaintiff testified that she had been diagnosed with cardiac sarcoidosis and had a defibrillator placed for irregular heartbeats. *Id.* at 102–03. Plaintiff testified that she experienced persistent dizziness and difficulty ambulating due to syncope and presyncope, which resulted in hospitalization. *Id.* at 103, 120–23. Additionally, Plaintiff testified that she had been diagnosed with fibromyalgia, bilateral carpal tunnel syndrome, and "suspected osteoarthritis." *Id.* at 103.

Further, Plaintiff alleged she had congestive heart failure and occipital headaches, which may have been caused by Humira, a medication she was prescribed for cardiac sarcoidosis. *Id.* Plaintiff asserted that she suffered from severe headaches, and the Depakote medication her

neurologist had prescribed for her "migraine prophylaxis" had not helped. *Id.* at 123–24. Plaintiff testified that she was also prescribed medication for post-traumatic stress disorder ("PTSD") and anxiety. *Id.* at 126–27.

At the time of this hearing, Plaintiff had two adult children and two grandchildren. *Id.* at 107. Plaintiff testified that she could not watch her grandchildren without their parents present. *See id.* Further, Plaintiff had raised her two nephews for one year, but could not pick them up from school or attend their activities due to her illnesses. *Id.* at 107, 119. Plaintiff testified that she had a driver's license but sold her vehicle when she became ill and instead used Metro Access for transportation. *Id.* at 107–08. Plaintiff occasionally had social visits, but she testified that she could not do "a lot of sitting and standing." *Id.* at 108–09. Prior to the hearing, Plaintiff made one trip to Philadelphia that she described as "very trying." *Id.* at 109.

The ALJ then asked Plaintiff about a visit to her doctor on June 12, 2019, in which she reported that she was doing well, felt like a "new person," and did not have any cardiovascular symptoms, including shortness of breath, chest pain, or palpitations. *Id.* at 110, 1867. Plaintiff responded that she did not recall the visit and that she still had problems with dizziness, shortness of breath, and vertigo. *Id.* at 110–12. Plaintiff testified that she tested positive for the "tilt test," stating that she would "instantly faint" once placed on a bed. *Id.* at 111. She explained that she had trouble with balance, concentration, using her hands, and pulling objects. *Id.* at 116–17.

Plaintiff testified that she lived alone but had a cousin and friend that lived nearby. *Id.* at 108. She asserted that she could stand for fifteen-to-twenty minutes at a time, lift five-to-ten pounds, and walk almost a city block. *Id.* at 112–14. With respect to household chores, Plaintiff testified that she could make microwavable meals, load the dishwasher, and do a small load of laundry. *Id.* at 117–18.

According to Plaintiff, she left her job as a security guard due to "stomach issues." *Id.* at 114. More specifically, she stated that her contract was terminated after she was moved to a hospital location following a company merger. *Id.* at 114–15. She testified that she was unable to meet the physical demands of the new job because it would have compromised her immune system. *Id.* at 115. The ALJ then asked whether Plaintiff had applied for any jobs that were less physically demanding, including a desk job. *Id.* Plaintiff claimed she did not have the necessary training for those jobs and that typing would be painful due to her carpal tunnel. *Id.* at 116.

After Plaintiff testified, the ALJ questioned vocational expert Sella Dixon. *Id.* at 128. Dixon classified Plaintiff's past job as a security guard as light work and her past job as a childcare attendant as medium work. *Id.* at 128–29. The ALJ then asked Dixon a series of hypothetical questions about an individual of the same age, education, and work experience as Plaintiff. *Id.* at 129. The ALJ asked Dixon if the hypothetical individual with the RFC the ALJ formulated could perform Plaintiff's past relevant jobs as performed or customarily performed in the national economy. *Id.* The ALJ questioned Dixon about a hypothetical individual with the following limitations:

> [The] individual can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The individual can never climb ladders, ropes and scaffolds. Further, the individual would need to avoid concentrated exposure to extreme cold as well as concentrated exposure to extreme heat as well as concentrated exposure to wetness, as well as concentrated exposure to excessive vibration, and the individual would need to avoid moderate exposure or could not tolerate more than moderate exposure to pulmonary irritants such as fumes, odors, dust, gases and poorly ventilated areas. The individual also would need to avoid concentrated exposure to hazardous moving machinery and unprotected heights.

*Id.* at 129. Dixon testified that an individual with these limitations could not perform Plaintiff's past work. *Id.* Dixon testified to the availability of jobs in the national economy that a person

6

could perform at the reduced light exertional and sedentary level. *Id.* at 129–30. These jobs, according to Dixon, included a routing clerk, cashier II, merchandise maker, table worker, order clerk, and document preparer. *Id.* at 130–31.

At the February 24, 2021 hearing, Plaintiff reiterated several of her impairments and also discussed issues with her cervical spine, lupus pernio, and migraine headaches. *Id.* at 68–69. Plaintiff testified she had a "disc bulge" that was shown to abut the nerve root and cause foraminal stenosis. *Id.* at 68. She testified that this disc degeneration caused sharp pain in her neck and hip. *Id.* at 73–74. Further, she testified to having a skin condition called lupus pernio resulting from her sarcoidosis, which caused an "itching and burning" sensation. *Id.* at 69, 75. She also discussed issues with dizziness, vertigo, and nausea. *Id.* at 77, 78.

According to Plaintiff, she had been hospitalized multiple times for issues such as polyp removal, food poisoning, and colitis related to her sarcoid condition. *Id.* at 80. The ALJ noted that Plaintiff had been diagnosed with fatigue and, to that end, Plaintiff testified that she woke up at 11:00 a.m. and took several two-hour-long naps every day. *Id.* at 84. With respect to headaches, Plaintiff testified that they occurred once or twice per week and could last between thirty minutes and two hours. *Id.* She asserted that she could not "do anything" when she had a headache. *Id.* at 84–85.

Dominique Warner, a vocational expert, testified after Plaintiff. *Id.* at 87. The ALJ asked Warner about a hypothetical individual with the following limitations:

> [A]ssume an individual of the claimant's age, education, and work experience who is limited to light work as that term is defined in the Social Security Administration's regulations; however, that individual can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual can never climb ladders, ropes, and scaffolds. Further, the individual can only frequently rotate, flex, and extend the neck. The individual would need to avoid concentrated exposure to extreme cold, as well as

7

> concentrated exposure to extreme heat, as well as concentrated exposure to wetness, as well as moderate exposure to humidity, as well as concentrated exposure to excessive vibration, as well as moderate exposure to pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas. The individual also would need to avoid concentrated exposure to hazardous moving machinery, and unprotected heights.

*Id.* at 88–89. Warner testified that the individual would be able to work as a security guard and perform other roles at the light work level. *Id.* at 89. These included merchandise marker, office helper, and sales attendant. *Id.* at 89–90. The ALJ then asked if a hypothetical individual limited to sedentary work would be able to perform Plaintiff's past work. *Id.* at 90. Warner responded in the negative but elaborated that such an individual could work as an addresser, document preparer, and call-out operator. *Id.* at 90–91. Warner further testified that absenteeism of greater than one day per month would preclude competitive employment. *Id.* at 92.

### D. The ALJ's Decision

On March 22, 2021, the ALJ issued a decision ruling that Plaintiff was not disabled and could perform her past relevant work. *Id.* at 28–30. The ALJ laid out his findings for the five-step process. *Id.* at 19–30.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 31, 2016, the alleged onset date. *Id.* at 19. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) degenerative disc disease; (2) osteopenia; (3) cardiac sarcoidosis/sarcoid myocarditis; (4) status-post implantable cardioverter-defibrillator ("ICD") implantation; (5) hypertension; and (6) emphysema. *Id.* The ALJ found that Plaintiff had the following non-severe impairments: right pons/pontine capillary telangiectasia, hypercholerolemia, atherosclerosis, vitamin D deficiency, prediabetes, congestive heart failure, thyroid nodule, pineal gland cyst, right kidney cyst, allergic rhinitis, esophagitis, gastritis/GERD, lupus pernio/skin impairments, stuttering, migraines, osteoarthritis of the hands/wrists, bilateral

carpal tunnel syndrome, fibromyalgia/myalgia/myofascial pain syndrome/neuralgia/neuritis, an anxiety disorder, and PTSD. *Id.* The ALJ noted that no medical provider recommended or anticipated aggressive treatment for these conditions and, further, that many could be characterized as mild, stable, or were altogether unsupported by the medical record. *Id.* at 19, 1272, 1280, 1284, 1997, 2049, 2053, 2408, 3418, 3500. Nonetheless, the ALJ stated that he considered these conditions when formulating the RFC. *Id.* at 19. Further, the ALJ concluded that Plaintiff's assertion at the hearing concerning a migraine diagnosis did not appear in the record and that, even if it had, her normal neurological examinations did not support such a diagnosis. *Id.* at 20. The ALJ further determined that Plaintiff's mental impairments of anxiety and PTSD did not cause more than a minimal limitation on her work-related activities and, therefore, were not severe. *Id.* at 20–22.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment in the Listings.[4] *Id.* at 22. At steps four and five, the ALJ formulated Plaintiff's RFC and assessed whether she could perform past relevant work. *Id.* at 23. Among other evidence, including Plaintiff's subjective complaints, objective medical evidence, and daily activities, the ALJ considered evaluations that Dr. Marisela Gomez and State Agency medical consultants Drs. Veronica Bedeau and Ann Williams performed. *Id.* at 24–27. In his formulation of the RFC at step four, the ALJ found that Plaintiff had the RFC to perform light work with the following exertional limitations:

> Plaintiff can never climb ladders, ropes, or scaffolds and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; can frequently rotate, flex, and extend her neck; must avoid

---

[4] The "Listings" are various physical and mental conditions that are defined in terms of specific medical signs and symptoms and are presumed severe enough to preclude gainful employment. *See* 20 C.F.R. §§ 404.1520(a)(4), (d) 416.920(a)(4), (d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1989).

>concentrated exposure to extreme cold, extreme heat, wetness, excessive vibration, hazardous moving machinery, and unprotected heights; must avoid moderate exposure to humidity and pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.

*Id.* at 23. The ALJ stated that he accounted for Plaintiff's diagnosis and treatment for sarcoidosis, ICD placement, and issues with her cervical spine by: (1) adding postural limitations to accommodate her pain; (2) limiting neck movements to accommodate her cervical spine issues; and (3) adding environmental limitations to accommodate her cardiovascular and respiratory impairments. *Id.* at 26–27.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that she could perform both her past relevant work as a security guard and other jobs that exist in significant numbers in the national economy. *Id.* at 28–29. Due to his RFC assessment and conclusion that Plaintiff could perform her past relevant work, the ALJ found Plaintiff was not "disabled" under the Act and, therefore, denied her request for SSI and DIB. *Id.* at 30. The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on October 12, 2021. *Id.* at 1.

## LEGAL STANDARD

Federal district courts have jurisdiction to review final decisions of the Commissioner. 42 U.S.C. § 405(g). The reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999; *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021) (citing *Butler*, 353 F.3d at 999). "Substantial evidence is 'more than a mere scintilla,' and means only 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is a "low bar." *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20 F.4th 1, 7 (D.C. Cir. 2021). It "requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).

Still, a reviewing court must "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weight given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009). The ALJ's decision must include "a statement of . . . findings and conclusions, and the reasons or the basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c). "Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion." *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009).

The plaintiff "bears the burden of demonstrating that the Commissioner's decision [is] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11–1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)); *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). The Court should affirm if it finds the ALJ based his decision on substantial evidence and applied the correct legal standards. *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010).

## **DISCUSSION**

Plaintiff argues that the ALJ erred in several respects in formulating Plaintiff's RFC, and that the ALJ's decision was not based on substantial evidence. ECF No. 10 at 14. Specifically, Plaintiff claims that the ALJ erred when assessing Plaintiff's RFC because he failed to: (1) adequately address Plaintiff's non-severe mental impairments; (2) set forth a function-by-function

assessment and develop a narrative discussion as to how the relevant evidence supported each conclusion; (3) properly evaluate pertinent evidence; and (4) properly consider the combination of Plaintiff's impairments. *Id.* at 6, 18, 20, 21, 22. The Commissioner argues that the ALJ "provided more than a mere summary of the medical evidence" and "built a logical bridge from the evidence to his conclusions in formulating Plaintiff's RFC." ECF No. 13 at 13 (internal quotations omitted). As such, according to the Commissioner, the ALJ's "findings were supported by substantial evidence." *Id.*

Upon review of the record, the Court holds that the ALJ erred in formulating Plaintiff's RFC by failing to demonstrate any assessment of her non-severe mental impairments. As a result, this portion of the RFC assessment is not supported by substantial evidence.

## I. The ALJ's Requirements in Formulating an RFC.

A "function-by-function" analysis requires a "'narrative discussion' identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000 (quoting S.S.R. 96–8p, 1996 WL 374184, at *3, *7). Courts in this Circuit use varying approaches to evaluate a function-by-function analysis under Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 (July 2, 1996).[5] Even if a court does not require "written articulation of all seven strength commands," the ALJ must still provide a "thorough narrative discussion of Plaintiff's limitations" and build a "logical bridge" between the evidence and his conclusions. *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (quoting *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008)); *see also Butler*, 353 F.3d at 1000; *Lane-Rauth*, 437 F. Supp. 2d at 67.

---

[5] Other opinions have discussed various approaches within this Circuit to the function-by-function analysis required in SSR 96–8p. *See Contreras*, 239 F. Supp. 3d at 207 (comparing *Johnson v. Astrue*, No. 11-788, 2012 WL 3292416 (D.D.C. Aug. 12, 2012) and *Banks*, 537 F. Supp. 2d 75 with *Lane-Rauth,* 437 F. Supp. 2d 63); *Charles v. Astrue*, 854 F. Supp. 2d 22, 29–30 (D.D.C. 2012).

Relevant evidence in the record includes medical records and source opinions, as well as the individual's subjective complaints about her condition. *See* 20 C.F.R. § 416.929(c)(1). With respect to the Plaintiff's subjective complaints, the ALJ may consider evidence that the Plaintiff is able to perform the normal activities of daily living. *See Goodman v. Colvin*, 233 F. Supp. 3d 88, 107 (D.D.C. 2017); *Davis v. Apfel*, 239 F. Supp. 3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."). Moreover, when analyzing the narrative discussion, courts in this Circuit have considered an ALJ's imposition of limitations that are more restrictive than opined by consultative examiners as a factor that can weigh in the Commissioner's favor. *See Said S. v. O'Malley*, No. 22-cv-00362, 2024 WL 2152737, at *10 (D.D.C. May 14, 2024) (finding logical bridge built where, among other things, the "ALJ's RFC was largely consistent with both doctors' opinions concerning Plaintiff's limitations, and where it differed, the RFC was more restrictive than what either doctor proposed.").

An ALJ need not "encompass the entirety of his analysis in any particular paragraph of his decision" so long as he "provide[s] a sufficient basis for this Court to understand his reasoning when viewing the decision as a whole." *Colter v. Kijakazi*, No. 20-cv-0632, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022). Put another way, an ALJ is obligated to consider all relevant evidence but is not required to discuss every piece of evidence submitted. *Said S.*, 2024 WL 2152737, at *10. Nonetheless, the ALJ may not "cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Id.* (citing *Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *11 (D.D.C. June 30, 2022), *report and recommendation adopted*, 2022 WL 3139026 (D.D.C. Aug. 5, 2022)). Further, an ALJ must at least discuss evidence that contradicts the Commissioner's position. *See Lane-Rauth*, 437 F. Supp. 2d at 67

(citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  If this standard is met, "the Commissioner's finding must be sustained even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the Commissioner's." *Ali v. Colvin*, 236 F. Supp. 3d 86, 90 (D.D.C. 2017).  That said, courts will only consider the grounds the ALJ proffers and will not consider any *post hoc* rationalization the Commissioner offers on appeal to this Court.  *See, e.g.*, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017).

In formulating the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." S.S.R. 96–8p, 1996 WL 374184, at *5 (internal quotations omitted).  If the ALJ determines that the claimant has at least one severe impairment or combination of impairments, the ALJ must consider how the claimant's severe *and non-severe impairments* impact a claimant's physical and mental capacities while working.  *See Cheryl S. v. Kijakazi*, No. 18-cv-1379, 2022 WL 21758804, at *10–11 (D.D.C. May 4, 2022); *report and recommendation adopted*, 2022 WL 21758803 (D.D.C. May 20, 2022) (remanding to agency because ALJ's decision did not "evidence an[] assessment of how [plaintiff]'s mental limitations, mild or not, impact her ability to perform her past work" after ALJ determined at step two that she had severe physical impairments); *see also* 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2).

Courts "must also be mindful of the harmless-error rule" such that even if the court "perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders*, 6 F.4th at 4.  For an ALJ's error to warrant reversal or remand, the plaintiff must demonstrate that the error was prejudicial and affected the disposition of the claim.  *Mitchell v. Berryhill*, 241 F. Supp. 3d 161, 173–74 (D.D.C. 2017) (finding any error in sufficiency of ALJ's

narrative discussion was harmless when Plaintiff failed to identify any work-related limitations the ALJ should have included in the RFC).

Here, the ALJ determined that Plaintiff had the RFC to perform "light work," except that Plaintiff could not climb ladders, ropes, or scaffolds and could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; could frequently rotate, flex, and extend her neck; must avoid concentrated exposure to extreme cold, extreme heat, wetness, excessive vibration, hazardous moving machinery, and unprotected heights; and must avoid moderate exposure to humidity and pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. AR at 23. As explained below, the ALJ's RFC assessment is erroneous as a matter of law because the ALJ failed to demonstrate that he undertook any assessment of Plaintiff's non-severe mental impairments.

## II. The Record Does Not Reflect that the ALJ Adequately Assessed Plaintiff's Mental Limitations in Formulating Her RFC.

Plaintiff argues that the ALJ failed to properly address her mental impairments of PTSD and anxiety in the RFC assessment. ECF No. 10 at 20–21; AR at 20–22. Plaintiff relies on *Cheryl S.*, in which the court held that the ALJ committed reversible error because his decision did not "evidence an assessment of how [the plaintiff]'s mental limitations, mild or not, impact her ability to perform her past work" in light of his determination at step two that she had several severe physical impairments. 2022 WL 21758804, at *11.

In *Cheryl S.*, the court stated that a mental condition that results in only "mild" impairments might disqualify an individual from disability benefits at step two if that mental condition is the only basis for the disability claim. *Id.* Nonetheless, "once the individual is determined to have at least one severe impairment or combination of impairments," the relevant consideration is how the impairments, including the non-severe impairments, "impact what the claimant can mentally and

15

physically do in a work setting." *Id.* As such, the court in *Cheryl S.* held that the ALJ was required to include a "'more detailed assessment of the claimant's particular mental abilities' than is required at steps two or three." *Id.* (quoting *Cobb v. Astrue*, 770 F. Supp. 2d 165, 171 (D.D.C. 2011)). "The additional detail is necessary because even a mildly limiting mental impairment could affect a claimant's ability to work on a regular and sustained basis." *Cheryl S.*, 2022 WL 21758804, at *11 (internal quotation marks omitted). In other words, the court ruled that merely addressing non-severe mental impairments at step two is insufficient if the ALJ determines at step two that the claimant has severe physical impairments. *See id.* Defendant disputes Plaintiff's characterization of the law and asserts that an ALJ is not required to explicitly address non-severe mental impairments in the RFC formulation. *See* ECF No. 13 at 18 (citing *Judea L. v. Kijakazi*, No. 22-cv-1879, 2023 WL 6065023, at *11 (D.D.C. Sept. 18, 2023)).

The Court holds that the ALJ erred in failing to assess how Plaintiff's mental impairments may have impacted her ability to perform past work in light of the ALJ's determination at step two that she suffered from severe physical impairments. As Plaintiff suggests, *Cheryl S.* is directly on point. 2022 WL 21758804, at *11. In that case, the court could not determine whether the ALJ's determination was based on substantial evidence because the ALJ's decision "d[id] not evidence any assessment of how [the plaintiff's] mental limitations, *mild or not*, impact[ed] her ability to perform her past work." *Id.* at *11 (emphasis added). Similarly, here the ALJ did not mention Plaintiff's PTSD and anxiety in the RFC formulation. *See* AR at 23–28. The ALJ, therefore, failed to properly assess how Plaintiff's PTSD and anxiety, even if not deemed severe, impacted "what [she] can mentally and physically do in a work setting" in light of the ALJ's determination at step two that Plaintiff suffered from six different severe physical impairments. *Cheryl S.*, 2022 WL 21758804, at *11.

Although Defendant relies on *Judea L.*, that case is distinguishable. In *Judea L.*, the ALJ explicitly considered Plaintiff's non-severe anxiety when formulating the RFC. 2023 WL 6065023, at *11 n.13. Here, on the other hand, the ALJ failed to assess how Plaintiff's PTSD and anxiety impacted what she could do in a work setting in light of her severe physical impairments. AR at 19. Notably, Defendant fails to identify any instance in which a court in this Circuit has ruled that an ALJ need not explicitly consider a plaintiff's non-severe mental impairments as part of the RFC formulation.

To be sure, the ALJ discussed Plaintiff's PTSD and anxiety at step two and concluded that they were non-severe because when they were "considered singly and in combination, [they] do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id*. Further, the ALJ noted generally that he considered Plaintiff's non-severe impairments in his RFC formulation. *Id.* at 19. But without "evidenc[ing] any assessment of *how* [Plaintiff's] mental limitations, mild or not, impact[ed] her ability to perform her past work," the Court "cannot determine whether the ALJ's RFC is based on substantial evidence." *Cheryl S.*, 2022 WL 21758804, at *11 (emphasis added). Accordingly, the RFC assessment "in its current form impedes effective judicial review" and necessitates a remand to the Commissioner. *Cobb*, 770 F. Supp. 2d at 171.

Because the Court remands for a new hearing on this ground, the Court will not address Plaintiff's remaining arguments. *See Saunders*, 6 F.4th at 5 (citing *Barry v. Astrue*, 622 F.3d 1228, 1234 n.3 (9th Cir. 2010)) ("Given our remand for a new hearing, we need not resolve [the other] claim[s.].") (alterations in the original). The ALJ is free, however, to consider Plaintiff's other arguments as necessary in the context of further proceedings on remand.

17

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Reversal (ECF No. 10) is **GRANTED**, and Defendant's Motion for Affirmance (ECF No. 13) is **DENIED.** This case is hereby remanded to the Commissioner for further administrative proceedings to evaluate the impact, if any, of Plaintiff's mental impairments on her RFC. The Court will issue a separate Order.

Date: September 26, 2024

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE